UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CSRS, LLC, ET AL.                                                    CIVIL ACTION

VERSUS                                                               NO. 24-358-RLB

ELEMENT 25 LIMITED

**ORDER**

Before the Court is Element 25 Limited's ("Defendant") Motion to Compel Arbitration and to Stay Pending Arbitration. (R. Doc. 21). CSRS, LLC, ("CSRS") and Fides Consulting, LLC's ("Fides") oppose the motion (R. Doc. 31). Defendant filed a Reply. (R. Doc. 35).

**I.    Background**

CSRS and Fides ("Plaintiffs") initiated this lawsuit on May 6, 2024, bringing breach of contract, suit on open account, and unjust enrichment claims against Defendant. (R. Doc. 1). The suit concerns a contract (the "Contract"), entered into between Defendant and CSRS on or about June 30, 2023, wherein CSRS agreed to perform work and services for Defendant in connection with the construction of an industrial facility in Ascension Parish, Louisiana. (R. Docs. 1; 1-1). According to Plaintiffs, the Contract "also applied to work and services provided by Fides." (R. Doc. 31 at 2). Plaintiffs allege Defendant owes them $830,783.25 for unpaid invoices from work they performed under the Contract. (R. Doc. 1). Pursuant to this same Contract, Defendant now brings the instant motion, requesting that this Court compel arbitration regarding this case.

**II.   Law and Analysis**

    **A.    Legal Standards**

Defendant argues the Contract is subject to the New York Arbitration Convention (the "Convention") and the Federal Arbitration Act (the "FAA"). This Court agrees. The Convention

1

governs the recognition and enforcement of arbitration agreements between citizens of nations that are signatories to the Convention, three of which are the United States, Australia, and the United Kingdom. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144 (5th Cir. 1985). The Convention is implemented by the FAA, which provides for arbitration enforcement in United States courts; thus, the Convention "incorporates the FAA except where [it] conflicts with the Convention[.]" *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991) (citations omitted).

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). Courts "should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002) (citation omitted). If these four requirements are met, the Court must enforce the arbitration clause "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Freudensprung*, 379 F.3d at 339 (citation omitted).

    **B.**    **Analysis**

        **i.**    **There is an Arbitration Agreement in Writing**

Defendant argues that the Contract contains an agreement to arbitrate, in London, any dispute relating to the Contract. This alleged agreement to arbitrate appears below:

> **16.1** In the event of any dispute, question or difference of opinion between Element 25 and the Consultant arising out of or in connection with this agreement (**Dispute**), a party may give a notice to the other party (**Dispute Notice**) specifying the Dispute and requiring its resolution under this clause.
> . . .

> **16.3** If a Dispute is not resolved within 20 Business Days after the Notice Date, either party may submit the Dispute to arbitration and: . . .
> (b) if the Consultant's primary place of business for the purpose of providing the Services is located outside of Australia, clause 16.5 will apply[.]
> . . .
> **16.5** (a) the Dispute must be referred to the London Court of International Arbitration (LCIA) for resolution by arbitration in accordance with the LCIA Rules for the time being in force, which procedure (LCIA Rules) is deemed to be incorporated by reference into this clause, and the seat of the arbitration shall be London, England[.]

(R. Doc. 1-1 at 4, 12, 13). To determine whether an arbitration agreement exists, this Court must assess one sentence from the above: "If a Dispute is not resolved . . . , either party *may* submit the Dispute to arbitration[.]" (R. Doc. 1-1 at 12) (emphasis added). Plaintiffs do not dispute that they entered into the Contract that included the above, but instead argue, citing *Retractable Technologies, Inc. v. Abbott Laboratories, Inc.,* 281 Fed. Appx. 275 (5th Cir. 2008) (per curiam) (unpublished), that the inclusion of "may" in this sentence makes the alleged arbitration agreement permissive.

In *Retractable*, a Fifth Circuit panel held that the following agreement was permissive: "[I]f the parties cannot resolve the dispute, then it 'may be resolved by [arbitration] in the manner described in Exhibit 12.2'[, which provides that] if a dispute cannot be resolved by the parties, then 'either party may initiate an [arbitration] proceeding as provided herein.'" *Id.,* at 276. While this provision is strikingly similar to the one at issue, this Court is not bound by *Retractable*. This Court is instead bound by *Deaton Truck Line, Inc. v. Int'l Bhd. of Teamsters, etc.*, 314 F.2d 418, 422 (5th Cir. 1962), a case Defendant cites. In *Deaton,* when the Fifth Circuit considered a clause stating that a "dispute may be submitted to arbitration[,]" it held that "'may' should be construed to give either aggrieved party the option to require arbitration." *Deaton*, 314 F.2d at 422. This Court is bound by *Deaton*, rather than *Retractable,* due to the following:

> [T]he Court [is] bound by *Deaton Truck Line* under the "rule of orderliness[,]" [which] provides that "one panel of [the Fifth Circuit] may not overturn another

3

panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or [an] *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). This is true even if the first "panel's interpretation of the law appears flawed." *Id.* [*Retractable* and *Deaton*] were panel decisions, so [*Retractable*] can[not] be interpreted as voiding the decision in *Deaton Truck Line*. The decision in *Deaton Truck Line*, as the earliest decision of the three, is therefore the authority that binds this Court.

*Primoris Energy Servs. Corp. v. New Day Aluminum, LLC.,* No. CV 18-5839, 2018 WL 6046194, at *5 (E.D. La. Nov. 19, 2018); *see Valley Int'l Cold Storage, LLC V. Conagra Foods Packaged Foods, LLC,* No. 1:24-CV-00044, 2024 WL 5274509, at *2 (S.D. Tex. June 6, 2024) (citations omitted) ("*Deaton Truck Line* remains controlling law absent an intervening change in law."); *see also Retractable,* 281 F. App'x at 275 ("Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4."). This Court must therefore follow *Deaton*, and other courts within the Fifth Circuit,[1] to find that "may" in the alleged arbitration agreement does not make arbitration permissive, but instead makes arbitration mandatory in the event one of the parties to the Contract requests it. Thus, this Court finds the alleged arbitration agreement is, in fact, an arbitration agreement (heretofore, the "Arbitration Agreement").

---

[1] *See Exec. Affiliates, Inc. v. Pucciano & Eng., Inc.,* No. CV 07-186-A-M2, 2007 WL 9706648, at *4 (M.D. La. June 27, 2007) (citations omitted) ("[T]he use of the word 'may' should be construed to give either party the option to require arbitration."); *see also Russo v. Hi-Tech Elec., Inc.,* No. CV 24-1484, 2024 WL 5397149, at *4 (E.D. La. Oct. 29, 2024) ("Even where the clause includes the word 'may,' courts have found a binding arbitration clause."); *see also Smiley Networks, Inc. v. Digital Advert., LLC,* No. A-09-CA-834-SS, 2010 WL 11603155, at *3 (W.D. Tex. Mar. 9, 2010) (presence of "may" in arbitration provision did not render provision permissive but made "arbitration mandatory once either party submits the dispute to arbitration"); *Reynolds & Reynolds Co. v. i3 Brands, Inc.,* No. 4:19-CV-01260, 2020 WL 3493547, at *2 (S.D. Tex. May 27, 2020), *report and recommendation adopted,* No. 4:19-CV-01260, 2020 WL 3490378 (S.D. Tex. June 26, 2020) ("either Party may submit the Dispute to binding arbitration" was binding arbitration agreement); *Volvo Truck N. Am., Inc. v. Crescent Ford Truck Sales, Inc.,* No. CIV.A. 07-3127, 2009 WL 2496556, at *5 (E.D. La. Aug. 13, 2009) (where parties agreed dispute "may be settled by final and binding arbitration" court found arbitration was mandatory "mandatory upon initiation").


### ii. The Arbitration Agreement Contains a Valid Delegation Clause

Defendant asserts that, according to the Contract, any dispute concerning arbitrability has been delegated to the arbitrator. Requiring that arbitration occur in the London Court of International Arbitration (the "LCIA") in London England, the Arbitration Agreement states that the LCIA Rules are "deemed to be incorporated by reference[.]" (R. Doc. 1-1 at 4). LCIA Rule 23.1 states, "The Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement." (R. Doc. 21-2). Based on the analysis below, this Court finds the incorporated LCIA Rule 23.1 serves as a valid delegation that this Court must abide by.

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 69 (2019) (citations omitted). The Fifth Circuit has held that a "[p]arties' express incorporation of rules from specific arbitration services in their arbitration agreement delegates arbitrability." *Richland Equip. Co., Inc. v. Deere & Co.,* 745 F. App'x 521, 524 (5th Cir. 2018) (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (incorporating the American Arbitration Association rules); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017) (incorporating the United Nations Commission on International Trade Law rules)). Thus, this Court finds that the incorporation of the LCIA Rules properly delegates arbitrability to the arbitrator.

"[A]bsent a challenge to the delegation clause itself, [courts] will consider that clause to be valid and compel arbitration." *Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.,* No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021); *see Edwards v. Doordash, Inc.,* 888

5

F.3d 738, 744 (5th Cir. 2018) ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration."). Plaintiffs' contention, detailed further below, is that the arbitration provision as a whole is unenforceable under Louisiana law and is not a specific challenge to the delegation clause itself. *Noble,* 2021 WL 3477481, at *3; *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 74 (2010) ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court."). Accordingly, this Court concludes that the Contract's incorporation of the LCIA Rules provides clear and unmistakable evidence that LCIA Rule 23.1 is a valid delegation clause with which this Court must comply.

        **iii.**      **The Court May Still Determine Whether the Arbitration Agreement Exists and Whether it is Null and Void**

Again, LCIA Rule 23.1 delegates to the arbitrator "the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement." (R. Doc. 21-2). Despite this "initial" language in LCIA Rule 23.1, this Court may, as it has in section (i), determine whether the Arbitration Agreement exists. *See Henry,* 568 U.S. at 66-71 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *see also Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020) ("If the existence of an arbitration contract between parties is challenged, the challenge is always for the courts to decide."); *see also Lopez de Leon v. Sanderson Farms Inc.,* 632 F. Supp. 3d 726, 732 (S.D. Tex. 2022) (citation omitted) ("Resolution of disputes over the 'very *existence*' of an arbitration agreement is solely a decision for a court and cannot be delegated through a delegation clause.").

6

As Plaintiff argues under Louisiana law, the FAA,[2] and the Convention, this Court may also determine whether the Arbitration Agreement is null and void, despite the delegation clause, because the Convention itself provides that where the arbitration agreement is found to be "null and void, inoperative or incapable of being performed" arbitration need not be compelled. Convention, Article II(3). Plaintiffs have asked this Court to find that La. R.S. § 9:2779 makes the Arbitration Agreement null and void and unenforceable because La. R.S. § 9:2779, which applies to construction projects like the one relevant to this suit, "declares null and void and unenforceable as against public policy any provision [that r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of [Louisiana.]" La. R.S. § 9:2779. While "[t]he limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale[,]'" the Eastern District has already held that whether or not an arbitration agreement is null and void under La. R.S. § 22:868(A)(2), which "prohibits enforcement of arbitration clauses in insurance contracts[,]" "falls within the limited scope of the Convention's null and void clause[.]" *Edenborn Off. Owners Condo. Ass'n v. Certain Underwriters at Lloyd's London,* No. CV 23-3546, 2023 WL 8258129, at *4 (E.D. La. Nov. 29, 2023) (citation omitted). Because La. R.S. § 9:2779 is so similar to La. R.S. § 22:868(A)(2), this Court finds that whether La. R.S. § 9:2779 nullifies the Arbitration Agreement also "falls within the limited scope of the Convention's null and void clause" so that this Court may assess this issue, as opposed to the arbitrator. *Id.*

---

[2] Plaintiff cites to *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.,* 2024-00449 (La. 10/25/24), 395 So. 3d 717, *reh'g denied,* 2024-00449 (La. 12/12/24), 397 So. 3d 424 to argue that discerning whether La. R.S. § 9:2779 nullifies the Arbitration Agreement is an issue of jurisdiction rather than arbitrability. (R. Doc. 31). This Court is refraining from ruling on this argument or Plaintiff's FAA argument as the Convention provides a clear answer regarding this Court's ability to assess whether the Arbitration Agreement is null and void and unenforceable.

7

### iv. The FAA and the Convention preempt La. R.S. § 9:2779

In full, La. R.S. § 9:2779 states the following:

A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
> (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions.
> (2) Requires interpretation of the agreement according to the laws of another jurisdiction.

C. The provisions of this Section apply to contracts, subcontracts, and purchase orders, as described in Subsection A, entered into on or after September 6, 1991.
D. Notwithstanding any other provisions of law to the contrary, the provisions of this Section shall not apply to negotiated labor contracts.

Based on the above, Plaintiff argues the Arbitration Agreement is null and void and unenforceable. (R. Doc. 17). Relying on *OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 447 (5th Cir. 2001) and *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898 (5th Cir. 2005), Defendant argues the FAA and the Convention preempt La. R.S. § 9:2779. (R. Doc. 35). Based on the analysis below, this Court agrees with Defendant.

Plaintiff argues that *Police Jury* stands for the proposition that "*foreign* arbitration clauses cannot be enforced where Louisiana law provides that such a clause is against public policy." (R. Doc. 31 at 13) (emphasis in original). Plaintiff reads *Police Jury* incorrectly, however. In *Police Jury*, Louisiana insurers were attempting, in the Western District of Louisiana, to use equitable

estoppel to compel arbitration under a foreign insurer's contract that was subject to the Convention in order to circumvent La. R.S. 22:868(A)(2). Thus, the Western District asked the Louisiana Supreme Court to assess "whether a domestic insurer may resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2)[.]" *Police Jury,* 395 So. 3d at 722. The Louisiana Supreme Court ultimately held that "equitable estoppel [wa]s not available under the[] circumstances because it conflict[ed] with the positive law of La. R.S. 22:868, which prohibits the use of arbitration clauses in Louisiana-issued insurance policies." *Id.,* at 729. The Louisiana Supreme Court did *not* come to the general conclusion that "*foreign* arbitration clauses cannot be enforced where Louisiana law provides that such a clause is against public policy." (R. Doc. 31 at 13) (emphasis in original). It held that foreign arbitration clauses cannot be enforced by domestic, non-signatory insurers through equitable estoppel. As the case before this court involves a foreign entity seeking to enforce an arbitration agreement that it is a party to, and not via equitable estoppel, *Police Jury* is inapplicable.

Plaintiff's reliance on La. R.S. § 9:2779 is also misplaced because it is preempted. As Defendant points out, the Fifth Circuit held in *OPE* that the FAA preempts La. R.S. § 9:2779:

> Although the Fifth Circuit has never determined whether the FAA preempts section 9:2779, we have held that the FAA preempts other state laws that preclude parties from enforcing arbitration agreements. . . . Section 9:2779 declares "null and void and unenforceable as against public policy any provision in [certain construction subcontracts] . . . which [ ] [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of [Louisiana]." La. Rev. Stat. Ann. 9:2779(B)(1). The statute directly conflicts with § 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally. . . . The FAA therefore preempts the Louisiana statute[.]

*OPE,* 258 F.3d at 447-48. Plaintiff asks this Court to ignore the Fifth Circuit's holding on the basis that the parties in *OPE* waived their rights pursuant to La. R.S. § 9:2779. It is true that, in

9

*OPE,* the relevant contract included a clause that stated, "The Parties . . . waives all redress to and rights and remedies under [La. R.S. §] 9:2779[.]" The Fifth Circuit, however, did not note that this had any impact on whether La. R.S. § 9:2779 was preempted. *Id.,* at 445, n.3.[3] Consequently, this Court sees no reason not to follow clear Fifth Circuit law on this issue, and concludes La. R.S. § 9:2779 is preempted by the FAA.

The Court comes to the same conclusion regarding the Convention. In *Lim,* the Fifth Circuit held that the Convention preempted a Louisiana statute, La. R.S. § 23:921(A)(2),[4] that would have prohibited enforcement of an international agreement requiring arbitration in the Philippines because the statute declared null and void choice of law clauses included in employment agreements. *Lim,* 404 F.3d at 904. The Fifth Circuit wrote, "The Louisiana anti-forum-selection-clause statute conflicts directly with the Convention's mandate to enforce arbitration clauses. Applying a straightforward preemption analysis, the Convention, as the 'supreme Law of the Land', preempts the directly conflicting Louisiana statute, unless, as plaintiffs claim, it satisfies an exception to the Convention." *Id.*

This Court finds the same is true with regard to La. R.S. § 9:2779. La. R.S. § 9:2779, like La. R.S. § 23:921(A)(2), has the effect of declaring null and void certain international agreements requiring arbitration in another country. Thus, also like La. R.S. § 23:921(A)(2), La.

---

[3] Further, the Contract in this case provided language encompassing an even broader waiver:
> Each party represents and warrants . . . that it is not entitled **to claim immunity from any** legal action or **proceeding** with respect of itself or any of its assets **in relation to the enforcement of this agreement** on the ground of sovereignty or otherwise **under any law**.
> (R. Doc. 1-1 at 4) (emphasis added).

[4] "(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." La. R.S. § 23:921(A)(2).

10

R.S. § 9:2779 directly conflicts with the Convention's mandate to enforce arbitration clauses. This Court relies on *Lim,* therefore, to find that La. R.S. § 9:2779 is preempted by the Convention unless it "satisfies an exception to the Convention." *Id.*[5]

Accordingly, the Court concludes that La. R.S. § 9:2779 is preempted by both the FAA and the Convention, because the Convention *encompasses* Chapter 2 of Title 9 of the FAA. Such a conclusion prevents the Convention from being rendered meaningless, and aligns with prior holdings of the Supreme Court of the United States. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 108 (1992) (citation omitted) ("[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983) (The Convention "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."); *Zschernig v.*

---

[5] The exception to the Convention noted by the Fifth Circuit in *Lim* was the Supreme Court's holding in *M/S Bremen v. Zapata Off–Shore Co.*, that forum selection clauses in international contracts are "prima facie valid" and should be upheld unless there is a clear showing that "enforcement would be unreasonable and unjust[.]" 407 U.S. 1, 15 (1972). The Fifth Circuit held that Louisiana's public policy, when weighed against federal public policy favoring international arbitration agreement enforcement, could not render the arbitration clause unreasonable. *Lim*, 404 F.3d at 906. Plaintiff points out that part of the Fifth Circuit's reason for affording less weight to Louisiana's public policy was because the employees involved were not Louisiana citizens. Plaintiff is correct in stating this, because the Fifth Circuit noted that, because the subject employees were Philippine residents, "plaintiffs' employment contracts do not present the inequities the Louisiana statute was crafted to prevent." *Id*., at 906 (emphasis in original). The Fifth Circuit even noted that the statute sought "to protect Louisiana citizen-employees from being subjected to litigation in a foreign forum, under laws with which they are not familiar and before a foreign body." *Id*. If it is assumed that Louisiana's public policy (as opposed to the United States) is at issue, it is possible that in the instant case, involving Louisiana citizens, Louisiana's public policy concerns would be heightened.

However, such an interpretation would require a reader of *Lim* to ignore the Fifth Circuit's equally clear assertion that it was also apportioning weight based on "the strong federal policy in favor of international arbitration agreements in general" *Id.* The undersigned is faced with a Contract to which the FAA and the Convention equally apply, and this Court sees no logic in finding that La. R.S. § 9:2779, when applied to this Contract, may be clearly preempted under the FAA pursuant to the holding of *OPE*, but not preempted by the Convention pursuant solely to implied dicta from *Lim*. Such a conclusion would require an expansive view of Louisiana's public policy vs. federal policy. Given that the overall balance of public policy concerns favors enforcing the arbitration agreements, Plaintiffs do not meet the "high burden of proof" necessary to show public policy renders the arbitration clause unreasonable. *Id.*

*Miller,* 389 U.S. 429, 440-41 (1968); *Clark v. Allen*, 331 U.S. 503, 508 (1947) (Where there is a conflict between a treaty and a state statute, the treaty will control.).

### v.    The Four Convention Requirements Are Met Here

According to the Convention, courts "should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco*, 293 F.3d at 273 (citation omitted). Here, there is an agreement in writing, and whether the agreement covers the instant dispute has been delegated to the arbitrator. Thus, the first factor is met. As for factors two through four, they are met as the arbitration is set to be in London, UK, a Convention signatory; the Contract and Arbitration Agreement arose out of a commercial legal relationship; and one of the parties to the Contract and Arbitration Agreement is not an American citizen. *Viator v. Dauterive Contractors, Inc.,* 638 F. Supp. 2d 641, 647 (E.D. La. 2009) (London, UK is a Convention signatory). As all of the factors have been met, this Court shall compel arbitration.

As none of the parties deny that the Contract "also applied to work and services provided by Fides[,]" this Court finds that Fides is also bound by the Arbitration Agreement. *See Graves v. BP Am., Inc.,* 568 F.3d 221, 223 (5th Cir. 2009) ("nonsignatory cannot sue under an agreement while at the same time avoiding its arbitration clause").

### vi.    The Case May Be Stayed Until the Arbitration Ends

"[T]he Convention and its implementing legislation do not explicitly authorize staying litigation pending arbitration, and thus parties whose arbitration agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. § 3, a provision of the domestic FAA." *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 601 F.3d 329, 332 (5th Cir.

12

2010) (citations omitted). Defendant requests that this Court stay this matter pending arbitration. The provisions of the FAA apply to actions governed by the Convention. 9 U.S.C. § 208. Under the FAA, when a court is presented with an arbitration agreement, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *2 (E.D. La. Mar. 28, 2011). As this Court finds that arbitration is required pursuant to the Convention and Defendant has requested a stay, the case may be stayed.

### III.    Conclusion

Considering the foregoing,

**IT IS ORDERED** that the Motion to Compel Arbitration and to Stay Pending Arbitration (R. Doc. 21) is **GRANTED** and this case shall be arbitrated, pursuant to the Arbitration Agreement, in London, UK, with the case to be **STAYED** in this court pending said arbitration.

Signed in Baton Rouge, Louisiana, on March 18, 2025.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**